## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Mar 11 2020, 8:54 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Renee M. Ortega
Lake County Juvenile Public
Defender's Office
Crown Point, Indiana

ATTORNEYS FOR APPELLEE
INDIANA DEPARTMENT OF
CHILD SERVICES

Curtis T. Hill, Jr.
Attorney General of Indiana

Abigail R. Recker
Deputy Attorney General
Indianapolis, Indiana

ATTORNEY FOR APPELLEE
LAKE COUNTY COURT
APPOINTED SPECIAL
ADVOCATE

Donald W. Wruck
Wruck Paupore PC
Dyer, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In re the Termination of the
Parent-Child Relationship of
M.M.E. (Minor Child) and
J.H. (Father)

J.H.,

*Appellant-Respondent,*

v.

Indiana Department of Child
Services,

*Appellee-Petitioner,*

and

Lake County Court Appointed
Special Advocate,

*Appellee-Casa*

March 11, 2020

Court of Appeals Case No.
19A-JT-2139

Appeal from the
Lake Superior Court

The Honorable Thomas P.
Stefaniak, Jr., Judge

Trial Court Cause No.
45D06-1903-JT-65

**Vaidik, Judge.**

# Case Summary

[1]    J.H. ("Father") appeals the termination of his parental rights to M.M.E.
("Child"). He doesn't present a sympathetic case: Child was conceived when
Father, then thirty-five or thirty-six years old, illegally had sex with his fifteen-
year-old stepdaughter. Under Indiana law, though, even fathers like J.H. are
entitled to procedural due process, and here procedural irregularities deprived
him of that due process. Therefore, we are compelled to reverse. However,

because Father has now been convicted of sexual misconduct with a minor for his wrongdoing, the proceedings on remand should be expedited.

# Facts and Procedural History

Father's stepdaughter, D.W. ("Mother"), gave birth to Child in December 2014, a few weeks after she turned sixteen. In March 2015, the Department of Child Services (DCS) filed a petition alleging that Child was a child in need of services (CHINS) after he was hospitalized with serious injuries consistent with being shaken. The petition identified Child's father as F.E., who had signed the birth certificate and who had inflicted Child's injuries. A few months into the CHINS proceeding, however, Mother reported that Father started having sex with her when she was eleven and that he could be the biological father. In October 2015, the State charged Father with several counts of child molesting and sexual misconduct with a minor, and he has been incarcerated ever since.

In late 2015 or early 2016, DNA testing in the criminal case confirmed that Father is Child's biological father. DCS then served Father with a summons, a notice of hearing, and a copy of the CHINS petition at the Lake County Jail. The CHINS court held an initial/detention hearing with regard to Father in August 2016. Father did not appear at the hearing, nor was he represented by counsel, and the trial court did not appoint an attorney to represent Father. After that, neither the court nor DCS took any further action regarding Father in the CHINS case. DCS did not file an amended CHINS petition naming or making allegations against Father or include Father in any of the subsequent

case plans, and the court did not hold a fact-finding hearing, hold a dispositional hearing, or issue a dispositional decree with respect to Father or distribute any of its orders to Father at the jail.

[4] Father eventually pled guilty to Class B felony sexual misconduct with a minor, and in January 2018 he was sentenced to twelve years in prison. DCS then initiated proceedings to terminate the parental rights of Mother, F.E., and Father. The termination hearing was held in August 2019. Father had been transferred to New Castle Correctional Facility and was not transported for the hearing, and he was not represented by an attorney. Two weeks after the hearing, the trial court issued an order terminating the rights of all three respondents.

[5] Father now appeals (but Mother and F.E. do not).

# Discussion and Decision

[6] Father raises several issues on appeal, but we find the first to be dispositive. He contends that procedural irregularities in the CHINS proceeding violated his constitutional right to due process and require reversal of the termination. As Father notes, we have held that "procedural irregularities in a CHINS proceeding[] may be of such import that they deprive a parent of procedural due process with respect to the termination of his or her parental rights." *In re A.P.*, 734 N.E.2d 1107, 1112-13 (Ind. Ct. App. 2000), *reh'g denied*, *trans. denied*. Here, Father cites the following irregularities: (1) DCS never filed an amended

CHINS petition identifying him as a parent of or alleging why Child was in need of services with regard to him; (2) the initial/detention hearing concerning him was not held within ten days of the filing of the CHINS petition, as required by Indiana Code section 31-34-10-2; (3) the trial court did not enter a denial on his behalf and hold a factfinding hearing, even though Indiana Code section 31-34-10-6 provides that a failure to respond to a CHINS petition constitutes a denial; (4) no dispositional hearing was held with regard to him; (5) no dispositional decree was issued with regard to him; and (6) he did not receive any case plans.

[7] DCS acknowledges most of these irregularities but argues that Father waived his due-process claim for purposes of appeal by failing to raise it in the trial court.[1] As DCS notes, we have held that when a parent makes a due-process claim based on CHINS irregularities for the first time on appeal, we "may" consider the claim waived. *In re S.P.H.*, 806 N.E.2d 874, 877 (Ind. Ct. App. 2004). However, as the word "may" implies, "we have discretion to address such claims[.]" *In re D.H.*, 119 N.E.3d 578, 586 (Ind. Ct. App. 2019), *aff'd on reh'g*, 122 N.E.3d 832, *trans. denied*. For two reasons, we choose to exercise that discretion in this case. First, the irregularities at issue were not isolated or

---

[1] There is nothing in the record indicating that Father has ever formally established, or even attempted to formally establish, his paternity pursuant to Indiana's paternity statutes. *See* Ind. Code art. 31-14. However, DCS makes no argument that Father was not entitled to due process in the CHINS case because of his failure to take such action. Moreover, we have held that DCS can petition to terminate the parental rights of a man who might be the father but who has not yet taken any action to establish paternity. *In re S.M.*, 840 N.E.2d 865, 870-72 (Ind. Ct. App. 2006).

minor. Other than serving Father with the CHINS petition (which did not include him as a parent or say anything about him) and holding an initial hearing (at which Father was neither present nor represented by counsel), the trial court and DCS essentially did nothing with regard to Father for the remainder of the CHINS proceedings. There was no factfinding hearing, dispositional hearing, or dispositional decree regarding Father, DCS did not send him any case plans, and the trial court did not send any of its orders to Father at the jail. Second, the trial court did not appoint counsel for Father in the termination case, in violation of Indiana Code section 31-32-4-3(a) (providing that if a parent in a termination case does not have an attorney and has not waived the right to one, the court "shall appoint counsel for the parent at the initial hearing or at any earlier time").[2] If the court had complied with that statute by appointing an attorney for Father, perhaps the due-process claim would have been raised before appeal.

[8] DCS also argues that Father was not harmed by the procedural irregularities in the CHINS proceeding. We acknowledge that the odds of Father and Child being reunified were (and are) incredibly slim given the disturbing

---

[2] There were actually two termination cases. In the first, the court appointed an attorney for Father, as required by Section 31-32-4-3. That attorney then moved to have the case dismissed "due to failure to complete within the time frame." Appellant's App. Vol. III p. 34. The court dismissed the case without prejudice. Three days later, DCS filed a new termination petition. The court held another initial hearing without Father present and did not appoint an attorney for Father. Father remained unrepresented for the rest of the trial-court proceedings (though, because of the quick transition from the first termination proceeding to the second, he may have believed that he was still represented by the attorney from the first proceeding).

circumstances of this case, but under Indiana law even fathers like J.H. are entitled to due process. The process Father was afforded in this case was woefully inadequate. Therefore, we must reverse the termination of Father's parental rights and remand this matter for further proceedings in the CHINS case (starting with the filing of an amended CHINS petition that includes allegations against Father).

[9]     All that being said, because Father has now been convicted of sexual misconduct with a minor, with Mother as a victim, DCS could proceed very quickly to termination on remand. While DCS is generally required to "make reasonable efforts" to reunify parents and children during CHINS proceedings, Ind. Code § 31-34-21-5.5(b), such efforts "are not required" if the court finds that a parent of a child in need of services has been convicted of, among other things, sexual misconduct with a minor against a victim who is the other parent of the child, Ind. Code § 31-34-21-5.6(b)(1). And if the court makes such a finding, DCS can immediately file a petition for termination. *See* Ind. Code § 31-35-2-4(b)(2)(A)(ii). These statutes were not in play during the original CHINS proceeding because Father was not convicted until January 2018, nearly three years after the CHINS case was opened and after DCS had already decided to seek termination. Of course, it is up to DCS to decide on remand whether to ask the trial court for a finding under Section 31-34-21-5.6(b)(1). In any event, we remind the trial court that Father has a right to counsel in all future CHINS or termination proceedings. Ind. Code § 31-34-4-6(a)(2)(A) (CHINS); Ind. Code §§ 31-32-2-5; 31-32-4-1; 31-32-4-3 (termination).

Reversed and remanded.

Najam, J., concurs.

Tavitas, J., concurs with separate opinion.

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In re the Termination of the Parent-Child Relationship of M.M.E. (Minor Child) and J.H. (Father) | Court of Appeals Case No. 19A-JT-2139 |
| J.H., | |
| *Appellant-Respondent,* | |
| v. | |
| Indiana Department of Child Services, | |
| *Appellee-Petitioner,* | |
| and | |
| Lake County Court Appointed Special Advocate, | |
| *Appellee-Casa.* | |

**Tavitas, Judge.**

[11] Although I concur, I write separately to note that I sympathize with the trial court's difficulty in addressing the amount of rights to which J.H. was entitled here. The facts of this case highlight a discrepancy in Indiana law. Under the current statutes, a putative father in a termination of parental rights proceeding

unfortunately is entitled to more due process rights than a putative father in an adoption case.

[12] Under the adoption statutes, a putative father must either: (1) establish paternity before a petition for adoption has been filed; or (2) timely register with the putative father registry pursuant to Indiana Code Section 31-19-5-12. *See, e.g.,* Ind. Code § 31-9-2-100 (defining the term "putative father"); Ind. Code § 31-10-5-12(a) (requiring a putative father to register to be entitled to notice of an adoption). In a termination of parental rights proceeding, however, DCS and trial courts are required to give notice to alleged fathers. *See, e.g.,* Ind. Code § 31-9-2-88 (defining "parent" to include an "alleged father"[3]); Ind. Code § 31-35-2-6.5(c)(1) (providing that a child's parent "shall receive notice of a hearing" in proceedings related to the termination of one's parental rights).

[13] Both adoption proceedings and termination of parental rights proceedings sever the parental relationship between a parent and a child. A putative father's obligations under each type of proceeding, however, are different. Moreover, in our statutes and caselaw, we use the terms "legal father", "biological father", "alleged father", and "putative father", which creates confusion regarding the due process rights to be given to each. I write separately to bring attention to this inconsistency.

---

[3] Indiana Code Section 31-9-2-9 defines "alleged father" for "purposes of IC 31-14" to mean "any man claiming to be or charged with being a child's biological father." Indiana Code Article 31-14, however, pertains to the establishment of paternity.